†PHIPPS ET AL. V. RATTERMAN, TREASURER.

1. FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Where under the provisions of section 5205, Revised Statutes, the trial court at the request of one of the parties, has in the judgment, stated the conclusions of fact found separately from the conclusions of law, and in one of the so-called conclusions of fact it is stated, as was done in this case, that the executor did not omit certain stock from the returns made by him of property from taxation because he believed said stock to be not taxable, but with intent on his part to evade the payment of any tax which the law imposed thereon, and that said returns were "false returns," and no fact was found in any of such findings which would justify such conclusion, but on the other hand all of the facts found strongly tended to show that the said stock was not returned for the reason that said executor in good faith believed, and had reasonable ground to believe, that such stock was not taxable, such finding should not be considered as a finding of fact, but as a conclusion of law.

2. FINDING OF FACTS AGAINST WEIGHT OF EVIDENCE.

But if it is to be considered as a proper finding of fact in this case, it is manifestly against the weight of the evidence heard in the case, which is all set forth in the bill of exceptions taken on the overruling of the motion for a new trial, based on the ground that the finding of facts, and the judgment entered was against the law and the evidence.

3. FALSE RETURN OF PROPERTY DOES NOT AUTHORIZE AUDITOR TO PLACE ON DUPLICATE OTHER PROPERTY OMITTED IN GOOD FAITH.

Under the provisions of section 2781, Revised Statutes, as passed April 14, 1886, if any person, whose duty it was to list property, or make a return thereof for taxation, shall in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall for each year ascertain as near as practicable, the true amount of personal property, money, credits and investments, that said person ought to have returned or listed for not exceeding (the) five years next prior to the year, in which the inquiries and corrections therein provided for are made, and to the amount so ascertained for each year he shall add fifty per centum, multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and enter the same for collection on the duplicate of the current year. But where a person has, in any year within five years prior to the year in which such correction is made, in good faith believing and having reasonable ground to believe that certain property owned by him is not taxable, omitted to return the same, and at the same time omits to return for taxation other personal property owned by him, subject to taxation, and which he had no reason to believe was exempt, this will not give to the auditor the right to place upon the duplicate for the current year the taxes and penalty on the amount of the property so in good faith omitted from his returns. As to such property thus omitted in good faith the returns made were not false.

ERROR to the Court of Common Pleas of Hamilton county.

SMITH, J.

This cause is in this court for the second time. The first time it was on a petition in error, brought by Ratterman as treasurer, seeking the reversal of the judgment of the court of common pleas in favor of the defendants below, finding that they were not liable for the taxes which had been placed upon the duplicate for the year 1887, by the auditor of the county against them, as the taxes due and payable on a large amount of the stock of the Pittsburg, Ft. Wayne and Chicago Railway Company held by them as executors and trustees under the will of Gardner Phipps, deceased, during the years 1882, 1883, 1884, 1885 and 1886, and which stock had not been returned for taxation for either of those years, as should have been done, as has been conclusively settled by several adjudications of the Supreme Court of the state, rendered after those years. If the returns made by such executors and trustees, (or by one of them, Gardiner E.

†For opinion of common pleas on second trial, see 4 Ohio Dec., 453. See also 4 O. C. D., 678, for a former circuit decision.

Phipps et al. v. Ratterman, Treasurer.

Phipps, who by arrangement between them undertook the duty of making proper returns for taxation), for those years, were, in contemplation of section 2781, Revised Statutes, "false returns," as to this stock, it is clear that the action of the county auditor was right, and in strict accordance with the law then in force as to this matter. If, however, the returns made were not false in the sense of the statute, it is also settled by the adjudications referred to, that the auditor was not authorized at the time that he did so, to place upon the duplicate of that year, against the defendants, the taxes which would have been chargeable against them, for the several years, if the stock had been properly returned for taxation, and it was the claim of the executors and trustees on the first hearing in this court, on the record as then made, that their returns for those several years were not false. That in failing to return this stock for taxation they had acted under the honest belief, and without negligence on their part, that it was not taxable, and ought not to be returned, and therefore that the action of the auditor under the section referred to, was not authorized by law. It was also disclosed in that case, that during each of said years, said defendants had, without any justification whatever, failed and neglected to make mention or report, on the returns for taxation made by them as executors and trustees for those several years, of a large amount of other stock held by them, which should have been returned. The taxes for the several years on this last named stock had at the time been placed by the auditor on the same duplicate, and it was sought to recover all of these taxes in the same action. But for the taxes so charged on this last named stock, by consent of parties, a judgment had been entered before and trial of the case against the defendants, and the amount thereof had been fully paid; while as has been said, the validity of the assessment of the taxes on the Pittsburg, Ft. Wayne and Chicago company stock was controverted, and has been the real subject of this litigation.

The principal ground upon which the reversal of the first judgment was sought, was, that the finding of the trial court that the defendant was not liable, was against the weight of the evidence, and that the motion for a new trial therefore should have been granted. On the evidence contained in the bill of exceptions, we were of the opinion that there had been such conduct on the part of the defendants in making their returns for taxation, and in not returning this and other taxable stock for taxation as made the returns "false returns," and therefore the auditor was justified in his action. And it is certainly true that this conclusion was based, in a very great degree, upon the admitted fact, that in the same returns, the defendants had without any justification therefor, omitted to return securities which they must have known to be taxable. We thought the action in the one case, threw light upon the conduct of the parties in the other. The judgment was therefore reversed and the cause remanded for a new trial. The brief decision rendered in the case is reported in 4 Ohio Circ. Dec., 678.

The case was again tried in the court of common pleas, and resulted in a judgment in favor of the treasurer, substantially as claimed by him. The case having been tried without a jury, at the request of the defendants, the court made a finding of facts and of law separately. A motion for a new trial was duly filed by the defendants, on the grounds of error of law occurring at the trial— that on the findings the judgment should have been for the defendants—that some of the findings were against the evidence and the law, and that what purported to be the eighth finding of fact, was not a finding of fact, but a conclusion of law. The motion was overruled, and an exception duly taken, and a bill of exceptions allowed by the court, containing all the evidence submitted to the court, with the various rulings as to evidence and other matters excepted to by defendants (and in this bill of exceptions our judgment was so taken as to avail the defendants of all of those exceptions), and a petition in error has been filed seeking a reversal of this last judgment, on the ground that the court erred in overruling the motion for a new trial, and in rendering judgment for the plaintiff below.

It is manifest, therefore, that the case now comes to us on a very different record from that which was before us on the former hearing; other and different evidence having been presented to the trial court, and a finding of facts having been made by the court which, unless manifestly wrong, as shown by the evidence contained in the bill of exceptions, must be received by us as correct. In addition to this, new questions of law as to evidence, etc., have been argued to us, and we have endeavored to give to the questions presented our careful consideration.

The finding of facts and of law made by the court is very long, but for the proper consideration of several of the questions raised, it seems necessary to give a copy of it, with the exceptions taken to the same by the defendants below:

### FINDINGS OF FACT.

1. That blank forms as prescribed by law, for listing for taxation all personal property, moneys, credits, and investments in bonds, stocks, joint stock companies or otherwise, held by the executors of Gardner Phipps, deceased, subject to taxation, were left by the ward assessor with Gardner E. Phipps, one of the two executors, to whom his co-executor had committed the management of the estate and its returns for taxation in each of the years, from 1882 to 1887, both inclusive.

2. That said Gardner E. Phipps, under the trusts of the last will and testament of Gardner Phipps deceased, as executor, held on the day preceding the second Monday of April, in each of said years, moneys subject to taxation, to wit: in 1882, $547.47; in 1883, $380.71; in 1884, $256.21; in 1885, $372.76; in 1886, $103.54, and in 1887, $90.32. That he further held, subject to taxation and which ought to have been returned, credits, to wit: in 1882, $3,763.55.

And he further held, on said day preceding the second Monday in April, in each of said years, subject to taxation and which ought to have been returned by him, investments in stocks, to wit: 500 shares, preferred stock, Chicago and Northwestern Railway company; 300 shares common stock, Chicago and Northwestern Railway company; 100 shares stock, New York Central and Hudson River Railway company; 295 shares of stock, St. Louis Transfer company; 25 shares stock, Western Union Telegraph company; and 1,210 shares stock, Pittsburg, Fort Wayne and Chicago Railway company; each of said shares being of the par value of $100.00 a share, and of different market values; and all of said companies being corporations not of the state of Ohio, but organized under the laws of other states, and not having any part of their corporate property in Ohio except the Western Union Telegraph company, which had in Ohio 4,950 miles of its total length of lines that were 78,955 miles in all, and except said Pittsburg, Fort Wayne and Chicago Railway company, which had in Ohio 251 65-100 miles of its total mileage, which from Pittsburg, in Pennsylvania, to Chicago, in Illinois, through Ohio and Indiana, were 468 and 32-100 miles in all, and which, up to January 14, 1873, when ousted therefrom under the decision, *Ohio ex rel.* v. *Sherman et al.*, 22 Ohio St., 411, had assumed to be a corporation of Ohio legally incorporated under the laws thereof, but was not such, and since said ouster has not assumed to be or to exercise the franchise of same.

3. That said Gardner E. Phipps, under the trusts of said last will and testament, as said executor listed, and made returns of, for taxation, in each of said years, upon said blank forms for listing left with him, the moneys aforesaid, that is, in 1882, $574.47; in 1883, $380.71; in 1884, $256.21; in 1885, $372.76; in 1886, $103.54, and in 1887, $90.32; but did not list or return said credits, in 1882, $3,763.55 or any part thereof; and did not list or return for taxation in any of said years, said shares of stock, or any of them, or any part thereof; and made no returns then or at any other time of said shares of stock, or said credits, or the value thereof of any part, for taxation in said years or in any of said years; but withheld from the assessor knowledge of his ownership of the same and did not disclose such ownership during such years, to the taxing officials or any of them of the city of Cincinnati, or of the state, county, or township.

4. That the sum set forth in the several causes of action in the petition, as charged upon the tax lists and duplicate of Hamilton county, Ohio, against Gardner E. Phipps and Rebecca A. Phipps, executors of Gardner Phipps, deceased, were the taxes in each of said years, from 1882 to 1887, charged, January 9, 1888, by the county auditor of said county upon the value, as then found and assessed by him, of the shares of stock aforesaid for taxation; of which said several sums, the amount of taxes upon the value so found and assessed of the shares of the Pittsburg, Fort Wayne and Chicago Railway company stock, adding thereto for the years 1886 and 1887 fifty per centum, was as follows: for 1882, $3,775.71; for 1883, $3,299.07; for 1884, $3,865.95; for 1885, $3,965.08; for 1886, $6,464.30; and for 1887, $7,184.68. That from August, 1852, until April 27, 1886, the auditors of Hamilton county and the annual boards of equalization of Cincinnati in said count' , where Gardner Phipps, testator, and Gardner E. Phipps and Rebecca A. Phipps, executor and executrix and trustees as aforesaid, resided during all of said period, declined and refused to take steps to correct returns for taxation by owners of shares of stock in said Pittsburg, Fort Wayne and Chicago Railway company, who had omitted the same from such returns, although such officers knew that a large number of such

Phipps et al. v. Ratterman, Treasurer.

shares were owned by persons so making returns for taxation in said county; and declined and refused to tax such shares when ownership thereof was disclosed in tax returns, but therein claimed to be non-taxable; which action of said officers was at various times during said period prior to 1882, submitted to the auditor of the state of Ohio, and approved by him, and no directions of a different nature were afterwards given by said county auditor and said boards of equalization, or either of them, prior to February, 1887. An opinion that such stock was not taxable under the laws of Ohio, was given by distinguished lawyers of that state to holders of stock and others prior to the day preceding the second Monday in April, 1882. In the early part of 1881 free discussion of the taxability of such stocks was had in certain daily newspapers of general circulation throughout Hamilton county, which newspapers were habitually read by said Gardner Phipps, testator, aud Gardner E. Phipps and Rebecca A. Phipps, executor and executrix and trustees as aforesaid, and on March 18, 1881, in one of said newspapers, the opinion of Rufus P. Ranney, of Cleveland, Ohio, and Samuel J. Tilden, of New York, appeared, holding that the capital stock in said Pittsburg, Fort Wayne and Chicago Railway company, held and owned by residents of Ohio, was not taxable, said opinion having been addressed to G. W. Cass, president of said last named railway company, and bearing date February 15, 1873.

Such actions and rulings of such taxing officers and such opinions were generally known, and until April 27, 1886, the belief was practically universal in said Hamilton county that the statutes of Ohio did not subject such shares of stock to taxation in the hands of the owner or holder thereof, or require the owner or holder thereof to include the same in the list or statement of his taxable property, to be delivered to the assessor or auditor.

6. In the early part of 1881, to wit, in the spring of that year, Gardner Phipps, testator as aforesaid, stated to Gardner E. Phipps, who was afterwards executor and trustee as aforesaid, that the stock in the Pittsburg, Fort Wayne and Chicago Railway company was not taxable; that he, said Gardner Phipps, had been so advised by Reuben R. Springer, who based his opinion upon the opinion given to him by eminent lawyers, and also upon statements to him by the county auditor, that said stock was not taxable. Said Reuben R. Springer was then, and thereafter until his death in 1885, a holder of a very large number of shares in the capital stock of said railway. Said Gardner Phipps, testator, for some years before his death, and said Gardner E. Phipps thereafter, until his death, were each members of the board of directors of the Merchants and Manufacturers' Insurance company, which company is one of those referred to above in the fifth finding as not taxed on Pittsburg, Fort Wayne and Chicago Railway stock, where the ownership thereof was disclosed in tax returns, but therein claimed to be non-taxable; said company, during the years 1876 to 1886, both inclusive, owning 400 shares of said stock, and returning the same in those years as not taxable, and no correction thereof being made except for 1886 in November of that year.

7. Said Gardner Phipps, testator, died on the 9th of July, 1881, and his last will and testament, dated February 7, 1880, was admitted to probate and record in the probate court of Hamilton county, on July 19, 1881. A copy of said will, excepting items 7, 8 and 10 thereof, which omitted items are immaterial to the questions at issue, is attached hereto as a part hereof as an exhibit marked "A."

Letters testamentary upon said will were issued by said probate court to said Rebecca A. Phipps and Gardner E. Phipps, the executors therein named. Said Rebecca A. Phipps and Gardner E. Phipps entered upon the discharge of their duties as such executors, and accepted and undertook the trusts imposed upon them by said will. No inventory of the property held by said executors was filed by said executors in the probate court of Hamilton county. Said Gardner E. Phipps, being the managing executor and trustee during his lifetime, superintended the making of the tax returns in question herein. Said Gardner E. Phipps died in the month of January, 1890, and said Rebecca A. Phipps died on the 27th day of April, 1891.

8. That said Gardner E. Phipps, executor, did not omit said stock from his said returns for taxation because he believed said stock not to be taxable, but with intent on his part to evade the payment of any taxes which the law imposed; that said returns so made by said Gardner E. Phipps, executor, by listing, as aforesaid, upon said blank forms left with him for the executors of Gardner Phipps, deceased, were false returns in and for each of said years.

And as a conclusion of law, the court find that the plaintiff is entitled to recover against the defendants upon the several causes of action in the petition, the following sums to wit: upon the first cause of action three thousand seven hundred and seventy-five and 71-100 dollars ($3,775.71); upon the second cause of action three thousand two hundred and ninety-nine and 07-100 dollars ($3,299.07); upon the hird cause of action three thousand eight hundred and sixty-five and 95-100 dollars ($3,865.95); upon the fourth cause of action three thousand nine hundred and sixty-five and 08-100 dollars ($3,965.08): upon the fifth cause of action six thousand four hundred and sixty-four and 30-100 dollars ($6,464.30); and upon the sixth cause of action seven thousand two hundred and eighty-four and 68-100 dollars ($7,284.68), making the total of twenty-eight thousand six hundred and fifty-four and 70-100 dollars ($28,654 70).

And thereupon said defendants excepted severally to the second, third, and the eighth of said findings of fact, and to each and every part of them, and of each of them, and also to said conclusion of law, and to each and every part thereof.

And said defendants further excepted to so much of said seventh finding as finds no inventory was filed by said executors for the reason that said portion of said seventh finding of fact is immaterial, in view of the provisions of the will of said Gardner Phipps, deceased.

And thereupon the defendants moved the court to set aside the conclusions stated in paragraph marked, numbered, and called the eighth finding of fact, and also to set aside the conclusion of law; which motions the court overruled; to each of which rulings the defendants then and there excepted.

Thereupon the defendants moved the court to enter judgment in their favor upon each cause of action stated in the petition, making said motion separately as to each of said causes of action ; and which motions the court overruled, to each of which rulings the defendants then and there excepted.

(A copy of the will of Gardner Phipps, deceased, was made a part of the finding of facts, but as the substance of so much of it as is necessary to a consideration of the questions raised is hereinafter stated, the will itself is omitted.)

We think it very clearly appears from these findings that for many years prior to April, 1886, it was the very general belief in Cincinnati and Hamilton county, where these defendants resided, and of the various state and county officers having charge of the assessment and collection of taxes therein, that the stock of the Pittsburg, Fort Wayne & Chicago Railway company was not taxable in this state, and having full knowledge that large blocks of it were owned by persons residing here, who did not return the same for taxation, no steps were ever taken to require such stock to be listed for taxation, and that even when it was specified in the tax return as held by the person making it, with the claim that it was not taxable, no taxes were ever assessed against the same. It further appears that this conclusion was based on the opinion of eminent lawyers, and was practically universal. In addition to this the finding of facts shows that Gardner E. Phipps, the executor and trustee, who made these returns, knew of this general belief, and had been informed by his father, Gardner Phipps, in his lifetime, that this particular stock was not taxable, and of the grounds of such opinion. If, therefore, there was nothing else in the finding of facts showing that these executors and trustees in making these returns did not act honestly or in good faith, it would seem that it would be going altogether too far to hold that such returns were false, because this stock had not been returned for taxation, and we could not do so.

We are met, however, by a direct statement in what is called the eighth finding of facts, "that Gardner E. Phipps, executor, did not omit said stock from his said returns for taxation because he believed said stock not to be taxable, but with intent on his part to evade the payment of any taxes which the law imposed; that said returns so made by said Gardner E. Phipps, executor, by listing as aforesaid upon said blank forms left with him for the executors of Gardner Phipps, deceased, were false returns in and for each of said years."

It is strenuously urged by counsel for the plaintiffs in error that this eighth finding is not a finding of fact in reality, but is a conclusion of law based on the other facts found and that the conclusion thus arrived at is not justified by the other findings, but is in direct conflict with them. And it is further urged that the trial judge erred in refusing to find as a fact (as he was expressly requested to do,) whether or not such executor when making these returns, believed that this stock was not taxable, and if he so believed, whether he had reasonable grounds therefor.

So far as these questions are concerned we may say, that we greatly doubt whether this eighth finding is one of fact; it seems to us rather a legal conclusion from the other facts found. It is true that it says that the executor did not omit to return the stock for taxation because he believed it was not taxable, but that it was done to evade the payment of taxes thereon. It does not state in any other part of the finding of fact which justifies any such conclusion. It seems strongly analogous to the case reported in 3 Ohio St., 87, which was an action of ejectment to recover the possession of real estate, and in which one of the parties requested the court to find and state his conclusions of fact found, separately from the con-

clusions of law. The finding made by the court in answer to the request was "that the plaintiffs are not seized of an estate in or entitled to the possession of the property in the petition described, or any part thereof, but that the defendants are seized in fee simple, and are rightfully entitled to the possession of said lands. The supreme court in passing upon this, and construing the statute say: "The provision is one of much importance, and it is in no sense directory. That there was no proper compliance with the request is admitted; and it is shown to us that the action of the court in that respect affords ground of reversal unless it be shown that the plaintiffs were not prejudiced thereby."

But even if this eighth finding is to be considered as a finding of fact, we are then of the opinion that it was manifestly against the evidence submitted, unless it must be held that the fraudulent intent on the part of the person making the return is conclusively shown by the conceded fact that when these returns were made, and the stock in question omitted therefrom, the person making them, without any justification failed to return other stocks subject to taxation, and which he had no reason to believe were exempt. If this be so, and the necessary result of such conduct was to make these returns false ones, in the meaning of the statute, and gave the right to the auditor to bring the taxes upon this particular stock on the duplicate as he did, we suppose that the error of the trial court in refusing specifically to find as to the intent with which the Pittsburg, Fort Wayne & Chicago Railway stock was omitted by the executor from his returns, or that the eighth finding was otherwise against the weight of the evidence, would not be prejudicial to the defendants below, for in that event the judgment actually entered would have been right.

The question thus raised is an important one, and as to which we have entertained much doubt. The decision of the supreme court in the case of *Genin's Executors* v. *Auditor*, 18 O. S., 534, is greatly relied upon by the counsel for the treasurer. It involved the construction of section 34, of the tax law of 1859 ( S. & S., 1452), and section 1 of the supplementary act of 1861 ( S. & S., 759). Section 34 gave to the county auditor the right, when he had reason to believe that any person had made a false return of his property for taxation, or had not returned the full amount thereof, or had omitted or made an erroneous return, to give notice to such person, and after a hearing, before the final settlement with the county treasurer, to correct the return and charge the person on the duplicate with the proper amount of the taxes. And by section 1 of the supplementary act of 1861 ( S. & S., 759), it was further provided that in making the corrections under section 34, the auditor should ascertain the full amount that should have been returned, and add thereto fifty per cent of the amount so ascertained, and place the two sums on the duplicate. In the case cited, Genin had returned but $10,181. The auditor, under proper proceedings, found that he should have returned $59,000. and he placed that sum on the duplicate, together with the fifty per cent penalty thereon. This the supreme court held was a literal compliance with the terms of the statute, and was valid.

It will be observed that this action was had under a statute not now in force, and which was very different from that under which the proceeding in the Phipps case was had. It provided only for the correction of the duplicate for the current year, and the language of it absolutely required the auditor, when there had been a false return, or no return at all, or a return of less amount than should have been returned, whether in good faith or not, to place upon the duplicate, the true amount with the fifty per cent penalty.

The law as to the corrections of the duplicate, as it stood when the action by the auditor was taken in this case, was that of April 14, 1886 (section 2781, Rev. Stat.). As it then stood, it provided that if any person whose duty it is to list property or make a return thereof for taxation, either to the assessor or the county auditor, shall in any year or years make a false return or statement, or shall evade making a return or statement, the county auditor shall, for each year, ascertain as nearly as practicable the true amount of personal property, moneys,

credits and investments that such person ought to have returned or listed, for not exceeding the five years next prior to the year in which the inquiries and corrections provided for in this and the next section are made; and to the amount so ascertained for each year, he shall add fifty per centum, multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate thereof to the county treasurer, who shall collect the same as other taxes. But section 2782 provides for the correction of the returns for the current year, not only when the returns are false, but also where from any cause the proper amount has not been returned, the section, in this respect, being similar to that construed in the Genin case; and under this section there would be no double payment of taxes on the same property. For if the taxes on the property returned by the owner had not been paid at the time the auditor makes the correction and adds the penalty thereto, he will only be called upon to pay the proper amount; but if the taxes on the amount returned by him should have been paid by him previous to the correction of the duplicate, he would be entitled to a credit on the amount charged against him for the sum actually paid by him.

The vital question then in this case is this: Whether if some property which should have been returned for taxation in any year within five years, has not been so returned, the owner in good faith believing, and having reasonable ground to believe, that it was not taxable, but at the same time such owner has made a false return, as to other property, or has evaded making a true return thereof, the auditor is authorized, not only to bring upon the duplicate, the property as to which the owner acted in bad faith, but in addition that as to which he acted in entire good faith.

At the hearing of the first case in this court, we inclined to the opinion that he was; that a false return as to a part of the property, or an evasion of his duty to return it, tainted the whole return, and made it false as to all of the property which, according to the provisions of the law, should have been returned, and therefore that the auditor was justified in placing this stock upon the duplicate.

A more careful examination of the statutes, and the decisions of the courts upon them have led us to the conclusion that such is not the case. It would seem that if the statute is to receive such a construction, it would operate most harshly upon the tax payer in a matter as to which he had acted in entire good faith, and for which he should not be punished by the infliction of a heavy penalty as must be the case if the view claimed by counsel for the treasurer is the correct one. But in such case not only would he be charged with this heavy penalty, but he might have to pay double taxes upon a part of the same property. Thus, if a person owning $100,000 of taxable securities, should during each of the past five years have falsely withheld $10,000 from his return, and regularly paid the taxes upon the $90,000 returned, the auditor on the literal terms of the statute, if this be the meaning of it, would be authorized to place the whole of the $100,000 upon the duplicate with the taxes thereon for each of said years, with a penalty of fifty per cent thereon, and collect the whole thereof, though the taxes on the $90,000 had been regularly paid each year. This would be manifestly wrong and unjust, and the intention to be this should not be imputed to the legislature unless the language used is clear and explicit. It would seem that what would be right in such case would be, to bring upon the duplicate the property fraudulently omitted from the return, and deal with that in the mode pointed out in the statute, and that if the property has in good faith been omitted, to take no steps as to this, for the reason that there was no falsity or evasion as to this, and, therefore, it should not under this section be brought upon the duplicate.

It appears, so far as we can gather from the reports of decided cases in this state, that this plan seems to have been the one adopted by the various taxing

officers and boards dealing with these questions. That is, that only property improperly omitted from the returns, has been brought upon the duplicate. And this seems to have been the construction placed upon the statute by the supreme court, for when called upon in the case of *The State* v. *Crites, Auditor,* 48 Ohio St., 142, to issue a writ of mandamus to the auditor, directing the steps to be taken by him in a proceeding under this section, he was ordered " to proceed to inquire into the matter of the omission of property from the tax return of C. L. Brice, and to enter for taxation on the tax duplicate of said county any amount that may be found to have been *improperly omitted* " during any of the five preceding years. See *State* v. *Crites,* 48 Ohio St., 461, where a copy of this part of the writ is given, thus seeming to distinctly recognize the difference between property which in good faith had not been returned for taxation, and that as to which there had been evasion or falsity.

In addition to this the legislature on April 24, 1893 (90 O. L., 233), soon after the decision in the Crites cases, passed a law amending section 2781, by which the auditor in case of such false returns, is authorized to correct the same and add the omitted amount and place the taxes and penalty on the omitted sums. This we are inclined to regard as a declaratory act, giving the true meaning of the section as it stood before, and as indicating that such property only as had been omitted by false or evasive conduct in the making of the returns was to be placed on the duplicate under the terms of this section.

There is another ground on which it is claimed by counsel for the defendants below that the return made by the executor and trustee should not be considered a false one in so far as this stock of The Pittsburg, Fort Wayne & Chicago Railway company, and the owner of it, is concerned. By the will of Gardner Phipps, the testator, he gave to his executors and to the survivor of them his stock in this and other companies named to hold the same during the life of his wife, on the trust that from the income thereof they were to pay all the taxes on this and other property given to her, and then to pay her $12,000.00 per annum. By another item he gave all the rest and the remainder of his property to his executors and to the survivor of them during their natural lives, on certain trusts for his children. Here were two separate trusts, concerning distinct property and with different beneficiaries. We incline to the opinion that there should have been separate returns as to each of these trusts. And we understand from the findings and evidence, that none of the property improperly omitted from the tax return belonged to this trust of which the widow was the beneficiary. Why then should she be prejudiced by the omission to return other stock in which she was not interested?

But as the conclusion at which we have arrived on the other and principal question will necessarily result in the reversal of the judgment of the court of the judgment of the court of common pleas, and if our view is correct should prevent a judgment for the treasurer on a new trial, it would seem unnecessary for us to discuss or decide this and several other questions argued to us, as to the rulings of the court on evidence, the burden of proof, etc. We suppose the entry should be that the judgment of the common pleas is reversed, and the cause remanded for a new trial.

*Wm. Worthington* and *J. W. Warrington,* for Plaintiffs in Error.

*W. L. Avery,* for Defendant in Error.